**UNITED STATES v. MORGAN et al.**
No. 545.

United States District Court
S. D. West Virginia, Huntington Division.
Aug. 5, 1950.

------

Dominic J. Cimino, Cleveland, Ohio, (Paul Marshall, Cleveland, Ohio, on brief), for plaintiff.

Okey P. Keadle, of Huntington, W. Va., for defendants Theodore F. Morgan and Hattie F. Morgan.

WATKINS, District Judge.

This action arises out of alleged overcharges made by defendants in the renting of a house located in Huntington, W. Va. Plaintiff asks for an injunction to restrain defendants from receiving further rent in excess of the maximum permitted under the Controlled Housing Rent Regulation, for restitution to the tenant, and treble damages under the provisions of Section 205(a) of the Price Control Act, 50 U.S.C.A.Appendix, § 925(a) and Section 206(b) of the Act of 1947, 50 U.S.C.A.Appendix, § 1896(b).

It is agreed that the maximum monthly rental for the house located at 310 W. Ninth Street was $50 unfurnished, $70 furnished, with no sub-tenant, and $75 furnished, with one or more sub-tenants. The period of occupancy is also agreed upon, the tenant having occupied the house for eight months, from September 1, 1948 to May 1, 1949, the period alleged in the complaint, and having had a sub-tenant for five months of such period, such that the maximum rental for such house, if furnished, during the period of occupancy was $585, whereas, the tenant paid a total of $800 ($100 per month) for the house and the furnishings. As to these facts there is no dispute. The owner of the house claims that she never demanded or received more than $50 per month for the house, or a total of $400. The usual contention is made that the other $50 per month was paid as rental on a few pieces of furniture. Here it is claimed that the furniture rental was paid to the landlord's daughter-in-law, and not to the owner. The tenant, Warren W. Tinsley, claims that the owner, Hattie F. Morgan, demanded a monthly rental of $100 per month from him when he first talked to her about the premises, referred him to her son to complete the details, and that he rented from the son, who acted as agent for his mother, and who secured affirmative approval of his mother to the $100 monthly rental before he made his first rental payment. The tenant further contends that in all of these arrangements nothing was said to him about rental of the furniture. The landlord denies that she ever asked the tenant to pay her $100 per month rent, or that she ever approved the acceptance of the down payment by her son, and says that she never authorized anyone to rent her house to Tinsley, whom she considered an undesirable tenant. Thus, there is a clear question of fact for decision, requiring the court to weigh the testimony of the respective witnesses and to decide who is telling the truth. After hearing their evidence and observing their conduct and demeanor on the witness stand, I make the following findings of fact and conclusions of law:

### Findings of Fact.

1. About August 8, 1948, Marguerite Tinsley, wife of Warren W. Tinsley, a machine shop estimator, and a World War II veteran, called on defendant, Hattie Morgan, for the purpose of renting a housing accommodation at 310 W. Ninth Street, Huntington, W. Va. Hattie Morgan owned the house in question, which was then occupied by her son Theodore Morgan, Jr., and Irene Morgan, his wife, who were planning to move to an adjacent garage apartment. Marguerite Tinsley was told by Hattie Morgan that the rent for the house was $100 per month, "that someone else has already offered $125, but you were first one that heard about it, and the first man that puts his deposit down gets the house." The

son could not vacate the house until the garage apartment was vacant, causing some uncertainty as to the exact date when the house would be available. Hattie Morgan referred Marguerite Tinsley to her son, to complete the rental arrangements for her, stating that "they will listen to any advice I have to give them * * * about it". The son had occupied the house for more than a year without paying any rent.

2. Later that same day Marguerite Tinsley and her husband called at the house and, after inspecting it, told the son and his wife that they would like to rent. The Tinsleys were again told that the rent would be $100 per month. Irene Morgan asked to leave some furniture, owned by her, in the house, inasmuch as the garage apartment to which they were moving was very small, and suggested that they might get some of their money back by renting out a couple of rooms and using the furniture. Nothing was said about the rental of furniture. The Tinsleys had furniture of their own in storage. When Tinsley offered to put up the deposit of $20, the son stated that he wanted to "go over to see what mother thinks about it", whereupon he went across the yard to his mother's residence, and, upon return, stated that "mother says it's all right". The son then accepted the deposit and gave a receipt showing it was to be applied on rental of premises at 310 W. Ninth Street, at the rate of $100 per month. Nothing was said about the rental of any furniture. However, the Morgans did leave a bed, a small chest of drawers, two chairs, a refrigerator, stove, maple kitchen set, four chairs, buffet, two end tables and the lower half of a kitchen cabinet, which were later used by the Tinsleys, with some furniture of their own, to rent two rooms.

3. Hattie Morgan denied that she demanded $100 per month rent for the house, denied that she had ever approved of her son accepting the $20 deposit from the Tinsleys, denied that her son had acted as her agent in renting the house, and, although she lived in adjacent property, and although Tinsley had done considerable work on the house in painting and repairing for some time prior to the time he moved, Hattie Morgan denied that she ever knew it had been rented to Tinsley until he moved into her house. She said she told her son "definitely no" when asked about renting to them, because she considered them undesirable tenants, and did not want them. Neither the son nor the daughter-in-law testified. The son had told Marguerite Tinsley that the rent would be $100 per month "any way you figure", and that "you can explain it any way you wish". Hattie Morgan had talked on the telephone to Mrs. J. S. Bostic, mother of Marguerite Tinsley, about renting the house to the Tinsleys, before Hattie Morgan had talked to Marguerite Tinsley. In that conversation, Hattie Morgan told Mrs. Bostic that she would be glad to have the Tinsleys, that the rent for the house would be $100 per month, and that she had been offered $125 per month. Hattie Morgan also denied this conversation. After Tinsley moved into the premises, at the request of the landlord, he signed a rental form which showed that the rental was $50 per month unfurnished.

4. The September, 1948 rent of $100 was paid to Theodore Morgan, Jr., who told Tinsley that he wanted the rent split up, one-half in cash and one-half by check. About October 1 Tinsley gave his check for the October rent to Theodore Morgan, Jr., which check was returned a day or two later by Theodore Morgan, Sr., husband of Hattie Morgan, who told Tinsley that "they did not want to get into trouble" and asked him to void the check and give a new one for $70 and $30 in cash, which was done, whereupon Theodore Morgan, Sr. gave him a receipt for $30 as "balance on rent and furniture". Tinsley was asked to have no further dealings with the son but to make payments to the father and to put on check "$50 furniture $50 rent". Tinsley paid $100 each month thereafter until May 1, 1949, in the manner requested.

5. Theodore Morgan, Jr. and his wife had borrowed $300 from the Welfare Finance Corporation. The father paid $30.-50 out of the October rent and a similar amount out of the November rent as payments on this loan, and on December 8, paid off the balance of the loan of $166.57. The son and his wife had been in financial difficulty, and the father had

made the monthly payments on the loan for several months before the Tinsleys had moved into the premises. The son did not remit to his mother the September rent that he had collected as agent for her. Although Hattie Morgan denied the son's agency, to either rent to the Tinsleys, or to collect the September rent, she has never taken the position that the Tinsleys still owe her for the September rent collected by her son. The father testified that he turned $50 of the rent collected over to his wife each month, and after paying the loan kept the balance for what his son and daughter-in-law owed him.

6. Hattie Morgan admitted that she knew Tinsley was paying $100 each month to her husband, and that he was making these payments to the loan company for her son and daughter-in-law out of the money received. Hattie Morgan owned other property and her husband acted as her agent in collecting rent upon such property, and for other purposes.

7. Theodore Morgan, Jr., was the agent for Hattie Morgan, his mother, in renting the premises for $100 per month and in collecting the September, 1948 rent. Theodore Morgan, Sr., was the agent of his wife in collecting the rent from October 1, 1948 to May 1, 1949, of $100 per month. Irrespective of what these agents did with the money, Hattie Morgan has demanded, and, by and through her agents, received as rent for the housing accommodations at 310 W. Ninth Street the sum of $100 per month from September 1, 1948 to May 1, 1949, a total of $800. This was $215 in excess of the maximum rent of $585 permitted by law, if the house had been rented as a furnished house. The plaintiff in this action gives the defendant the benefit of any doubt as to this matter, and asks for restitution only upon the basis of a furnished rather than an unfurnished house.

8. No part of the $100 per month was paid to Theodore Morgan, Jr., or Irene Morgan, his wife, as rental for furniture as contended by defendants, Hattie Morgan and Theodore Morgan, Sr. The tenant was asked to pay $50 of the September rent in cash and $50 by check, and to indicate on each subsequent check that part of the house rent was for furniture rental, for the purpose of defeating and avoiding the Controlled Housing Rent Regulations.

9. The defendants Hattie Morgan, Theodore Morgan, and Theodore Morgan, Jr., have violated these Rent Regulations, and have failed to show that their violations in demanding and receiving this excessive rent, were neither wilful nor the result of failure to take practicable precaution against their occurrence. On the contrary, I find that such overcharges and violations were wilful.

10. The defendant Hattie Morgan is financially able to comply with the order of this court to make restitution to Warren W. Tinsley for these overcharges.

### Conclusions of Law.

1. That Irene Morgan be dismissed as party defendant because she has not been served with process.

2. Plaintiff is entitled to the injunctive relief demanded in its complaint against Theodore Morgan, Theodore Morgan, Jr., and Hattie Morgan.

3. The defendant Hattie Morgan must make restitution to Warren W. Tinsley of the rental overcharge of $215 mentioned above. She will be directed to pay to the Treasurer of the United States, for and on behalf of Warren W. Tinsley, such sum of $215.

4. Judgment will be entered in favor of the United States against Hattie Morgan for $430, being twice the amount of the overcharges.

5. Plaintiff is entitled to recover its costs from the defendant Hattie Morgan.

6. The act of the agents, Theodore Morgan, Sr., and Theodore Morgan, Jr., in renting the premises for $100 per month and in collecting such rents were within the scope of their authority, and were therefore the acts of the principal Hattie Morgan.

7. Under Section 825.1 of the Controlled Housing Regulations, "housing accommodations" "means any building * * * or part thereof * * * rented or offered for rent for living or dwelling purposes,

together with all privileges, services, furnishings, furniture, equipment, facilities and improvements connected with the use or occupancy of such property."

An order may be entered in accordance with these findings of fact and conclusions of law.